UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALEXANDER STEIN**         ) | CIVIL CASE NO.: 1:23-cv-628 |
|                              ) | |
| Plaintiff                    ) | |
|                              ) | |
|                              ) | **COMPLAINT** |
| **ALEXANDRIA OCASIO-CORTEZ**, an ) | |
| individual,                  ) | |
|                              ) | |
| Defendant.                   ) | |
|                              ) | |

## INTRODUCTION

1.  Plaintiff Alexander Stein is a political commentator and political comedian who operates a Twitter account with hundreds of thousands of followers dedicated to political commentary, satire, and criticism, including of individual elected officials. This requires Mr. Stein to monitor and comment on social media "feeds" of elected officials, such as those posted on Twitter and Facebook.

2.  On or about July 13, 2022, Defendant United States Representative Alexandria Ocasio-Cortez, blocked Mr. Stein from access to the Twitter account @AOC, her *de facto* "official" Twitter account, which she primarily uses to post her views since being elected to Congress.[1]

3.  Ms. Cortez blocked Mr. Stein on July 13, 2022, in retaliation to Mr. Stein's exercise of his First Amendment right, because earlier that day Mr. Stein, in the context of political commentary and satire, complimented Ms. Cortez.

---

[1] Although Ms. Cortez established a new Twitter account with the handle @RepAOC after her election, it has just over 760,000 followers while her @AOC account has over 13.4 million followers. She uses her @AOC account to promote her views and communicate with her followers. She has tweeted just over 1,500 tweets from her @RepAOC account, while she has tweeted over 14,000 tweets from her @AOC account.

4.     Mr. Stein has a constitutional right to access Ms. Cortez's Twitter account as part of vigorous public comment and criticism. Ms. Cortez's practice of blocking Twitter users she disagrees with is unconstitutional and this suit seeks to redress that wrong.

5.     As the Supreme Court observed just a few years ago, social media platforms such as Twitter and Facebook provide "perhaps the most powerful mechanisms available to a private citizen to make his or her voice heard" and is in effect, a "vast democratic forum." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017). As demonstrated by Ms. Cortez's thousands of tweets and more than 13.4 million followers on her @AOC account, Twitter and social media empowers her to "become a town crier with a voice that resonates farther than it could from any soapbox." *Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997). Mr. Stein has a constitutional right to hear that "voice."

6.     As the Second Circuit Court of Appeals recently recognized, when faced with a similar "blocking" case, it is unconstitutional for a political figure to "engage in viewpoint discrimination by utilizing Twitter's 'blocking' function to limit certain users access to [a] social media account, which is otherwise open to the public at large, because [they] disagree with their speech." *Knight First Amendment Institute, et al.*, v. *Donald J. Trump, et. al.*, No. 18-1691-cv, slip op. at 4 (2d Cir. 2019)).

7.     As part of the exercise of his First Amendment rights, Mr. Stein desires to engage in political discussions in the robust public forum that is Ms. Cortez's huge Twitter account. Her retaliatory response to Mr. Stein's valid viewpoint was to block Mr. Stein from: (a) viewing her @AOC Twitter account, (b) replying to or "sharing" her Tweets, or (c) otherwise engaging with those members of the public who interact within the replies to her tweets.

8.      Plaintiff respectfully requests that the Court declare that Mr. Stein exclusion from this public square violates the First Amendment, and order that Mr. Stein's access to Ms. Cortez's Twitter account be immediately restored.

## JURISDICTION AND VENUE

9.      This action arises under the constitution and laws of the United States of America. Jurisdiction is conferred on this court pursue pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 2201-2202.  Jurisdiction supporting Plaintiff's claim for attorney's fees and costs is conferred by the Equal Access to Justice Act, 28 U.S.C. § 2412 and 42 U.S.C. § 1988.

10.      Venue is proper in the District of Columbia pursuant to 28 U.S.C. §1391(b).  Most of the events which are alleged herein occurred in the District of Columbia.  AOC is a member of the United States Congress and has an office in this District.

## PARTIES

11.      Plaintiff Alexander Stein is a United States citizen and a resident of the state of Texas.

12.      Defendant Alexandria Ocasio-Cortez is a citizen of the United States and a resident of the state of New York. Defendant is currently serving as the United States representative for New York's 14th Congressional District. She and her staff oversee and operate her Twitter account using the handle @AOC. Defendant or her agents have blocked Mr. Stein from her Twitter account.

**FACTUAL ALLEGATIONS**

13. Twitter is a social media platform that currently has more than 340 million active users worldwide, including some 68 million in the United States. The platform allows users to publish short messages, to republish or respond to others' messages, and to interact with other Twitter users in relation to those messages.

14. A Twitter "user" is an individual who has created an account on the platform. A user can post "tweets" to a web page on Twitter that is attached to the user's account. Tweets can include photographs, videos, and links. Some Twitter users do not tweet (publish messages) at all. Others publish hundreds of messages a day. Collectively, Twitter users "tweet" more than 500 million tweets per day.

15. A Twitter user adopts an account name, which is an @ symbol followed by a unique identifier (e.g. @AOC), and a descriptive name (e.g. Alexandria Ocasio-Cortez). The account name is called the users "handle."

16. Elected officials, including Ms. Cortez, regularly use Twitter to communicate with their constituents, who themselves use Twitter to connect directly and immediately with elected officials about the issues they are most passionate about.

17. Speech posted on Twitter ranges from personal insult to poetry, but particularly relevant here is that a significant amount of speech posted on the platform is political speech by, to, or about the United States Government and its elected officials.

18. A Twitter user's web page displays all tweets generated by the user, with the most recent tweets appearing at the top of the page. This display is known as a user's "timeline." When a user generates a tweet the timeline updates immediately to include that tweet. Anyone who can view a user's public Twitter web page can see the users timeline.

19. Alongside the handle, a user's webpage will display the date the user joined Twitter and a button that invites others to tweet to the user. This button is visible only to other Twitter users. A user's Twitter webpage may also include the following: a short biographical description; a profile picture such as a headshot; a header image which appears as a banner at the top of the web page; the users location; a button labeled with an envelope symbol which allows users to correspond privately; and a small sample of photographs and videos posted to the user's timeline, which link to a full gallery.

20. An individual "tweet" comprises the tweeted content (this includes a message, including any embedded photograph, video, or link), the user's account name (with a link to the user's Twitter webpage), the users profile picture, the date and time the tweet was generated, and the number of times the tweet has been replied to, retweeted by, or liked by other users.

21. Twitter web pages and their associated timelines are visible to everyone with internet access, who are not blocked including those who are not Twitter users. However, although non-users can view users' Twitter web pages, they cannot interact with users on the Twitter platform.

22. Because all Twitter web pages are by default visible to all Twitter users and to anyone with access to the Internet, users who wish to limit who can see and interact with their tweets must affirmatively protect their tweets. Other users who wish to view protected tweets must request access from the user who has protected her tweets. Protected tweets do not appear in third party search engines, and they are searchable only on Twitter, and only by the user and her approved followers.

23. A user whose account is public, i.e., not protected, but who wants to make her tweets invisible to another user can do so by "blocking" that user. Twitter provides users with the capability to block other users, but, importantly, it is the users themselves who decide whether to make use of this capability. A user who blocks another user prevents the blocked user from interacting with the first user's account on the Twitter platform.

24. A blocked user cannot see or reply to the blocking user's tweets, view the blocking users list of followers or followed accounts, or use the Twitter platform to search for the blocking user's tweets. The blocking user will not be notified if the blocked user mentions her, nor will the blocking user see any tweets posted by the blocked user.

25. If the blocked user attempts to follow the blocking user or to access the Twitter web page from which the user is blocked, the user will see a message indicating that the other user has blocked him or her from the following account and viewing the tweets associated with the account.

26. Mr. Stein received this type of blocking message from Ms. Cortez's Twitter account. But <u>@AOC is a designated public forum operated by AOC in which political speeches engaged in disseminated and debated and her blocking of Mr. Stein is unconstitutional as a result.</u>

27. Twitter users can subscribe to other users' messages by following those users' accounts, unless blocked. Users see all tweets posted or retweeted by accounts they have followed. This display is labeled home on Twitter site but is often referred to as a user's feed.

28. Twitter permits users to establish accounts under their real names or pseudonyms. Users who want to establish that they are who they claim to be can ask Twitter to verify their accounts. When an account is verified, a blue badge with a check mark appears next to the user's name on his or her Twitter page and on each tweet the user posts. Both Ms. Cortez's and Mr. Stein's Twitter accounts are verified.

29.     Beyond publishing tweets to their followers, Twitter users can engage with one another in a variety of ways. For example, they can "retweet" (republish) the tweets of others either by publishing them directly to their own followers or by "quoting" them in their own tweets. When a user retweets a tweet, it appears on the user's timeline in the same form as it did on the original user's timeline, but with the notation indicating that the post was retweeted.

30.     A Twitter user who is not blocked can also reply to other users' tweets. Like any other tweet, a reply can include photographs, videos, and links. When the user replies to a tweet, the reply appears on the user's timeline under the tab labeled "tweets & replies." The reply will also appear on the original users feed in a "comment thread" under the tweet that prompted the reply. Other users' replies to the same tweet will appear in the same comment thread.

31.     Reply tweets by verified users, reply tweets by users with a large number of followers, and tweets that are "favorited" and retweeted by large numbers of users generally appear higher in the comment threads.

32.     A Twitter user was not blocked can also reply to other replies. A user whose tweet generates replies will see the reply below his or her original tweet. The collection is sometimes referred to as a "comment thread." Twitter is called a "social" media platform in large part because of comment threads, which reflect multiple overlapping conversations among and across groups of users.

33.     A Twitter user who is not blocked can also "favorite" or "like" another user's tweet by clicking on the heart icon that appears under the tweet. By "liking" a tweet, a user may mean to convey approval or to acknowledge of having seen the tweet.

34.     A Twitter user who is not blocked can also "mention" another user by including the other user's Twitter handle in a tweet. A Twitter user mentioned by another user will receive a notification that he or she has been mentioned in another user's tweet.

35.     Tweets, retweets, replies, likes, and mentions are controlled by the user who generates them. No other Twitter user can alter the content of any retweet or reply, either before or after it is posted. Twitter users cannot prescreen tweets, replies, likes, or mentions that reference their tweets or accounts.

36.     Ms. Cortez established the @AOC Twitter account in 2010 to share her political views, and then used it to further and support her campaign to be the United States representative for House District 14. After her election in November 2018, and her swearing in January of 2019, she began using the account as an instrument of her office and her primary account.

37.     Today, Ms. Cortez (and her aides) use it almost exclusively as a channel for communicating with the public about her office's policies, actions, and opinions. Because of the way she uses the account, Ms. Cortez's tweets from the handle @AOC have become an important source of news and information about her office (and the Government), and comment threads associated with the tweets have become important forums for speech by, to, and from Ms. Cortez.

38.     Ms. Cortez presents the account to the public as one that she operates in her official capacity rather than her personal one. @AOC is controlled completely by her in her official capacity as the United States representative. Ms. Cortez controls who may view her tweets, reply to her tweets, and view the replies to her tweets.

39.     Ms. Cortez describes herself in the biography section of @AOC as" US Representative, NY-14 (BX & Queens)." The account bears a blue badge indicating it has been verified by Twitter. Ms. Cortez's account is generally accessible to the public at large without

regard to political affiliation or any other limiting criteria unless Ms. Cortez or her staff blocks access. Any member of the public can view her posts. Ms. Cortez has not protected her tweets, and anyone who wants to follow the account can do so. She has not issued any rule or statement purporting to limit by form or subject matter the speech of those who reply to her tweets

40. Ms. Cortez uses @AOC to release public statements and official policy positions.

41. The comment threads associated with tweets from @AOC are important public forums for discussion and debate about Ms. Cortez, her decisions, her conspiracy theories, her socialist views, and her official government policy.

42. Typically, tweets from @AOC generate thousands of replies, retweets, and quote tweets. Some of the replies generate an equal number of replies in turn. The @AOC account is a kind of virtual town hall in which Ms. Cortez and her aides use the tweet function to communicate news and information to the public, and members of the public use the reply function to respond to Ms. Cortez and her aides so as to exchange views with one another.

43. Mr. Stein is actively engaged in current affairs and in participating in the discussions common in comment threads on the @AOC account.

44. Ms. Cortez has blocked Mr. Stein from viewing, replying to, and participating in the comment threads of @AOC because Mr. Stein complimented Ms. Cortez when they crossed paths in Washington, D.C. on the steps of the Capitol, on or about July 13, 2022.

45. Ms. Cortez did not appreciate the compliment, and she blocked Mr. Stein from @AOC the very same day.

46. Below is the message Mr. Stein received when he was blocked from the account.



47. As a result, Ms. Cortez has thus expelled Mr. Stein from participating in the public square.

48. Mr. Stein's compliment was political satire of a political strategy regularly used by Ms. Cortez whereby she responds to opposition to her policies by saying that her political opponents want to date her.[2]

49. Mr. Stein also criticized Ms. Cortez's pro-abortion position.

50. At first, Ms. Cortez was flattered by Mr. Stein's compliment and approached him and posed for a "selfie" with him while flashing a peace sign at Mr. Stein's camera.

51. Soon after, when she realized on her own or was informed by her staff that Mr. Stein does not share her political views, she posted angry tweets and videos about the incident.

52. Ms. Cortez blocked Mr. Stein in retaliation for his political speech. Her retaliatory actions were premised on Mr. Stein's political satire of her, and his political opposition to Ms. Cortez's words, actions, and her support for the murder of unborn children.

53. Ms. Cortez's blocking of Mr. Stein was viewpoint-based. If Mr. Stein was a supporter of Ms. Cortez, Ms. Cortez would not have blocked him. The blocking of Mr. Stein

---

[2] This is well documented and commonly satirized. *See, e.g.,* The Celebrity Dating Game with AOC! - YouTube, The Babylon Bee, https://www.youtube.com/watch?v=Wk7nOdPcgFc.

imposes an unconstitutional restriction on his speech in a designated public forum and its right to petition the government for redress of grievances.

54. Mr. Stein can no longer view Ms. Cortez's Twitter feed. He can no longer reply to Ms. Cortez's tweets, and he can no longer participate in the discussions in the replies to Ms. Cortez's tweets. Each new tweet by Ms. Cortez is a piece of information that Mr. Stein is foreclosed from receiving and a potential discussion (in the replies to that tweet) in which Mr. Stein cannot participate.

## CAUSE OF ACTION

## FIRST CAUSE OF ACTION

*Violation of the First Amendment of the Constitution Guaranteeing Free Speech*

55. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

56. At all times relevant to this Complaint, Defendant was acting under the color of law as an elected Congressional Representative.

57. Plaintiff was engaged in First Amendment-protected speech in its posting Tweets online about Defendant, viewing Defendant's tweets, complimenting the Defendant and engaging in political satire about the Defendant, and criticizing the Defendant's position about abortion.

58. Plaintiff's speech was on a matter of public concern and did not violate any law.

59. By blocking Plaintiff from her official Twitter account, Defendant Cortez prevented Plaintiff from exercising his First Amendment rights, including its right to speak freely and right to receive information.

60. Defendant's blocking of Plaintiff was an improper viewpoint-based restriction on speech.

61. Defendant's official Twitter page, @AOC, is a designated public forum.

62. Defendant engaged in this conduct intentionally, knowingly, willfully, wantonly, maliciously, and in reckless disregard of Plaintiff's constitutional rights.

63. Defendant's actions and/or omissions caused, directly and proximately, Plaintiff to suffer damages. The acts and inactions of Defendant caused Plaintiff damages in that he was prevented from speaking freely on a matter of public concerns, among other injuries, damages, and losses.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Alexander Stein respectfully requests that this Court enter judgment in its favor and against Defendant Alexandria Ocasio-Cortez, and award him all relief as allowed by law and equity, including, but not limited to the following:

a. A declaration that Defendant's viewpoint-based blocking of Plaintiff from the @AOC Twitter account violates its constitutional rights;

b. An injunction requiring that Defendant unblock Plaintiff from the @AOC Twitter account, and prohibiting Defendant from blocking Plaintiff from the account in the future;

f. Reasonable Attorney's fees and costs, pursuant to 28 U.S.C. § 2412, and 42 U.S.C. § 1988; and

g. Such further relief as justice requires.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all claims and issues so triable pursuant to Federal Rule of Civil Procedure 38(a).

DATED: March 8, 2023                                   Respectfully submitted,

/s/ Jonathan Gross
Jonathan Gross
Bar ID: MD0162
2833 Smith Ave., Suite 331
Baltimore, MD 21209
(443) 813-0141
jon@clevengerfirm.com

*Attorney for Plaintiff Alexander Stein*