UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXANDER STEIN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 1:23-cv-00628-JMC |
| | ) |
| ALEXANDRIA OCASIO-CORTEZ, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM OR
IN THE ALTERNATIVE TO STAY**

This case arises from an incident in which the Plaintiff, Alexander Stein, confronted the Defendant, U.S. Rep. Alexandria Ocasio-Cortez (D-NY), on the steps of the U.S. Capitol and hurled a series of abusive. sexist, misogynist, harassing and racist personal epithets.  Mr. Stein posted a video of the incident.  The Congresswoman then blocked Mr. Stein from her personal/campaign Twitter account, @AOC.

There is a split in the Circuits as to the proper test for determining if a public official's act of blocking a user from a social media account constitutes state action.  The Supreme Court has granted petitions for writs of certiorari in two cases, one from the Ninth Circuit, *Garnier v. O'Connor-Ratcliff,* 41 F.34th 1158 (9th Cir. 2022), *cert. granted*, 43 S. Ct. 1779 (2023), and one from the Sixth Circuit, *Lindke v. Freed*, 37 F.4th 1199 (6th Cir. 2022), *cert. granted*, 143 S. Ct. 1780 (2023).   Under the Sixth Circuit ruling, a public official's blocking of a user from the officials' social media account does not constitute state action unless the managing of the account is undertaken utilizing the official's governmental authority, such as relying on government employees to operate the account. Under the Ninth Circuit ruling, a public official's blocking of a

user constitutes state action if the account is used to discuss official matters or has the appearance of an official forum.

The Congresswoman has an official government account, @RepAOC, that is separate from the political account she personally operates: @AOC – the account from which Mr. Stein is blocked. U.S. House rules bar any Member of Congress from using government staff to manage their political accounts or from permanently posting content in connection with their official duties, such as floor speeches or committee hearings, on their political accounts. As a result, nearly all Members of Congress maintain two distinct sets of social media accounts – one for government purposes as defined by House Rules and the other for personal and political content. The Complaint fails to allege that the @AOC account is her government account or that she uses any governmental employees to manage it – and in fact, she does not. Either the Court should adopt the Sixth Circuit test and dismiss the Complaint, or in the alternative, stay this proceeding until the Supreme Court issues rulings in the two cases.

Even assuming *arguendo* that the Congresswoman's management of the account constitutes state action and that the account is a designated "public forum," Stein's speech constituted "fighting words" not protected under the First Amendment. His exclusion from a public forum for abusive and harassing conduct does not constitute any form of viewpoint discrimination and is not content based. Mr. Stein was not blocked from the Congresswoman's government account,t and blocking him from the Congresswoman's personal/campaign account serves the significant interest of the Congresswoman, as a public official and as a private citizen, in protecting herself from abuse and harassment absolutely unrelated to any viewpoint or expression of opinion of any kind. For that reason also, the Complaint fails to state a claim.

For those reasons the Complaint should be dismissed for failure to state a claim, or, in the alternative, the case should be stayed until the Supreme Court issues rulings in the two cases.

## I.  LEGAL STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"When ruling on a Rule 12(b)(6) motion, the court may consider 'the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint and matters about which the Court may take judicial notice.'" *Cefarrati v. JBG Properties. Inc*., 75 F. Supp. 3d 58, 63 (D.D.C. 2014)(quoting *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002)). "'Where a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.'" *Marshall v. Honeywell Tech. Solutions, Inc.*, 536 F. Supp. 2d 59, 65 (D.D.C. 2008)(quoting *Vanover v. Hantman*, 77 F. Supp. 2d 91, 98 (D.D.C. 1999)).

Judicial notice is appropriate of ""'"a fact that is not subject to reasonable dispute" if it…"can be accurately determined from sources whose accuracy cannot reasonably be questioned."'" *Kaspersky Lab*, *Inc. v. United States Dep't of Homeland Security*, 909 F.3d. 446, 464 (D. C. Cir. 2018)(quoting *Hurd v. District of Columbia*, 864 F.3d 671, 686 (D.C. Cir. 2017)).

## II.  FACTUAL ALLEGATIONS IN THE COMPLAINT AND MATTERS OF WHICH JUDICIAL NOTICE MAY BE TAKEN

Defendant Alexandria Ocasio-Cortez is a Member of the U.S. House of Representatives from the 14th District of New York. Prior to her election to Congress, the Congresswoman

established an account on Twitter, @AOC, which she then used in her personal capacity as a private citizen and in her campaign for Congress in 2018. (Complaint ("Cmplt.") ¶36). Separately, her government office maintains a government Twitter account, @RepAOC. Cmplt. ¶ 2 n.1. The @AOC account links to the Congresswoman's campaign website, www.ocasisoscortez.com  The official Twitter account, @RepAOC, links to her official House website, www.ocasio-cortez.house.gov.

Under U.S. House Rules, of which the Court may take judicial notice, there is a strict separation between the government and campaign websites and social media accounts of a Member of Congress.  Only  the creation and ongoing management of an official website may be paid for with the government funds that each Member receives to run their office, the "Member's Representational Allowance."   U.S. Committee on House Administration, MEMBERS' CONGRESSIONAL HANDBOOK 38 (updated March 31, 2023)(attached hereto as Exhibit 1). Such official websites "must be located in the HOUSE.GOV host-domain and must be hosted in conformance with the regulations issued by the Committee on House Administration." *Id*. at 38 ¶3. Official social media accounts are "subject to the same requirements as content on Member websites." *Id*. ¶6.  The URL for an official website or social media account "must be recognizably derivative or representative of the name of the Member or the name of the office sponsoring the website…." *Id.* at 39.

The content of an official website or social media account "[m]ay not include … political party (except for political party affiliations) or campaign information." *Id.* Rather, all such content "must be in compliance with Federal law and House Rules and Regulations applicable to official communications and germane to the conduct of the Member's official and representational duties." *Id.*

Under House Rules as interpreted and enforced by the House Ethics Committee, of which this Court may also take judicial notice, an official Member website "[m]ay not include personal, political or campaign information: and "[m]ay not be directly linked or refer to a website created or operated by a campaign or any campaign-related entity, including political parties and campaign committees." House Ethics Committee, HOUSE ETHICS MANUAL 140 (2022)(relevant pages attached hereto as Exhibit 2).

Official office funds "may not pay for campaign expenses or political expenses (or any personal expenses), " *id*. at 135, which would include the expenses of operating or maintaining a Member's unofficial (personal and/or campaign) social media account. The House Administration Committee Member's Handbook states clearly that the Member's Representational Allowance (official funds) "may not pay for personal expenses" and "may not pay for campaign expenses." MEMBER'S HANDBOOK at 2. These prohibitions are based in part on the statutory prohibition on use of official funds for non-official purposes, 31 U.S.C. §1301(a), and on the statutory authorization for the Member's Representational Allowance, which provides that those official government funds can be used only "to support the conduct of the official and representational duties of a Member or Member-elect of the House of Representatives with respect to the district from which the Member or Member-elect is elected." 2 U.S.C. §5341(a).

In conformity with these rules, the Congresswoman's official account is "@RepAOC," links to the official website on the House.Gov domain and is strictly limited to official content. By contrast, the "@AOC" account, her personal/campaign account, as even a cursory glimpse will disclose, contains substantial political and partisan content, solicits support for her positions and legislation introduced or backed by her, and is directly linked to her campaign website, www.ocasiocortez.com. In conformance with the law and House Rules, no House employees or

financial resources are used to maintain or manage the @AOC personal/campaign Twitter account, and the Complaint does not suggest otherwise. Indeed, the Complaint acknowledges that the @AOC account "is controlled completely by her…" Complaint ¶38.

On July 13, 2022, the Congresswoman and Mr. Stein were on the steps of the Capitol. Cmplt. ¶44. The Complaint references an incident in which Mr. Stein allegedly "complimented" the Congresswoman, *id*. ¶44, as the basis for her decision to block Stein, and references a tweet posted by the Congresswoman about the incident. *Id*. ¶51. That tweet can be found at https://twitter.com/AOC/status/1547397629260226560. In it the Congresswoman posts a YouTube video posted by Mr. Stein himself of the incident.

In the video, Mr. Stein can be seen yelling at the Congresswoman, right next to her, as she ascends the steps of the Capitol, yelling:

> My favorite big booty Latina. I love you AOC, you're my favorite. She wants to kill babies but she's still beautiful. You look very beautiful in that dress. You look very sexy. Look at that booty on AOC! That's my favorite big booty Latina. I love it. AOC. Nice to meet you AOC. Look how sexy she looks in that dress. Whoo, I love it AOC. Hot, hot, hot like a tamale!

Later that day, the Congresswoman blocked Mr. Stein from her @AOC account. Complaint ¶¶2, 3. As a result, Mr. Stein cannot see or reply to the Congresswoman's tweets on her @AOC account, view her list of followers or followed accounts or use the Twitter platform to search for her tweets. *Id*. ¶¶23-24.

In the Complaint, Mr. Stein alleges that the @AOC account is a "designated public forum," Cmplt. ¶61; that, in blocking Mr. Stein, the Congresswoman was "acting under the color of law," *id*. ¶56; that his conduct on the Capitol steps "prevented Plaintiff form exercising his First Amendment Rights," *id*. ¶59; and that the blocking was "an improper viewpoint-based restriction on speech." *Id*. at 60.

### III. ARGUMENT

#### A. The Complaint Should Be Dismissed Because the @AOC Account Is Not a Government Account or the Proceeding Should be Stayed Pending a Supreme Court Ruling on the Issue

As noted above, there is a split in the Circuits with respect to the test for determining whether, in maintaining a social media account, an elected or public official is engaging in state action, making the account a public forum of some kind for purposes of First Amendment analysis.

On the one hand, the Second, Fourth, Eighth, and Ninth Circuits have adopted the view that if an official's social media account is used to discuss official business and has an official appearance, it should be treated as a public forum and the official's managing of the account should be regarded as state action. In the recent Ninth Circuit case in which certiorari was granted, *Garnier v. O'Connor Ratcliff*, 41 F.4th 1158 (9th Cir. 2022), two members of a school board blocked two parents from their Facebook and Twitter accounts.

The Ninth Circuit held that the test for state action should be whether "'(1) the employee "purports[s] to or pretend[s] to act under color of law," (2) his "pretense of acting in the performance of his duties... had the purpose and effect of influencing the behavior of others," and (3) the harm inflicted … "related in some meaningful way either to the officer's governmental status or to the performance of his duties."'" *Garnier*, 41 F.4th at 1170 (quoting *Naffe v. Frey*, 789 F.3d 1030, 1037 (9th Cir. 2015)(internal quotations omitted)). The Court found that the school board members had identified themselves as public officials on their social media page; posted mostly about official activities and policy; and used the page to solicit constituent input about official school district matters. *Id*. at 1171. Given those facts, the Court held that the school board members' "maintenance of their social media pages, including the decision to block…constitutes state action…." *Id*. at 1173. The Second, Fourth and Eighth Circuits have adopted a similar

approach. *Knight First Amendment Institute v. Trump*, 928 F,3d 226 (2d Cir. 2019), *cert granted, judgment vacated as moot sub nom. Biden v. Knight First Amendment Inst.*, 141 S. Ct. 1220 (2021); *Davison v. Randall*, 912 F.3d 666 (4th Cir. 2019); *Campbell v. Reisch*, 986 F.3d 822 (8th Cir. 2021).

A very different approach was adopted by the Sixth Circuit in the other case in which certiorari was granted, *Lindke v. Freed*, 37 F.4th 1199 (6th Cir. 2022). In that case, a city manager in Michigan blocked a citizen from the city manager's Facebook page. The Court ruled that under Supreme Court precedent, "the ultimate question is whether a defendant's action 'may be fairly treated as that of the State itself.'" *Lindke*, 37 F.4th at 1203 (quoting *Jackson v. Metro Edison Co.*, 419 U.S. 345, 351 (1974)). The Court held that "social media activity may be state action when it (1) is part of an officeholder's 'actual or apparent dut[ies],' or (2) couldn't happen in the same way without the authority of [the] office.'" *Id*. (quoting *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001)).

The Court noted that official authority would be indicated when state law requires an officeholder to maintain a social media account. *Id*. at 1203. The Court further suggested that the "use of state resources may also indicate that running a social media account is an official's 'actual or apparent duty.'" *Id*. at 1204. And the Court noted that the use of state authority is indicated by an account name that includes the office—"@KentuckyGovernor"—as distinct from a personal page called "@JohnDoe" which "belongs to Doe-the citizen—not Doe-the governor." *Id*. The Court acknowledged that it was "part[ing] ways" with other Circuits, because "[i]nstead of examining a page's appearance or purpose, we focus on the actor's official duties and use of government resources or state employees." *Id.* at 1206.

Neither the District of Columbia Circuit nor this Court have yet ruled on this issue. Were this Court to adopt the Sixth Circuit's approach, it is clear that the @AOC account would not be a

8

government account of any kind and that the Congresswoman's blocking of Mr. Stein from that account would not constitute state action. The account name cannot and does not use her official title; by contrast, the official account does (@RepAOC). She is forbidden by law and House rules from using any government financial resources or employees to manage the personal/campaign @AOC account, and the Complaint nowhere alleges that she does. The @AOC account links to her campaign website—not to her official website. The @AOC account was established by the Congresswoman before she even became a candidate, Cmplt. ¶36, so the account was clearly not established under or using official authority, and the account has never been managed pursuant to official authority.

There is good reason for this Court to adopt the Sixth Circuit's approach, particularly in this case. Both the Ninth and Sixth Circuits attempted to apply the "nexus" test for ascertaining the existence of state action. Under that test, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior "may be fairly treated as that of the State itself.'" *Brentwood Academy v. Tenn. Secondary School Athletic Ass'n,* 531 U.S. 288, 295 (2001)(quoting *Jackson v. Metropolitan Edison Co*., 419 U.S. 345, 351 (1974)). "Our cases have accordingly insisted that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.. . . First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Lugar v. Edmonson Oil Co*., 457 U.S. 922, 937 (1982).

In this case, given the clear legal and operational distinctions between the Congresswoman's governmental Twitter account and the @AOC personal/campaign account from which Mr. Stein was blocked, it is manifest that the blocking was *not* caused by "the exercise of

9

some right or privilege" created by the federal government. The Congresswoman was acting as a private citizen and a candidate in exercising a blocking function that any user of Twitter can exercise. Cmplt. ¶23 ("Twitter provides users with capability to block other users…."). Nor was she depriving Mr. Stein of an opportunity to share his views with her or comment on her official actions—which he at all times has been free to do, and remains to this day free to do, on her official account, @RepAOC. The Court should adopt the Sixth Circuit test and dismiss this case on the grounds that the Congresswoman's blocking of Mr. Stein did not constitute state action.

In the alternative, the Court's decision on this motion should be stayed until the Supreme Court renders decisions in these cases. In *Raven v. Sajet*, No. 22-cv-2809-CRC, 2023 U.S. Dist. LEXIS 115136 (D.D.C., July 5, 2023), plaintiff alleged that the director of a Smithsonian museum violated his First Amendment rights by blocking him from the director's Twitter account. The Court, noting the split in the Circuits and the Supreme Court's grant of certiorari in the Ninth Circuit and Sixth Circuit cases, "declines to decide definitely at this juncture which test applies," and instead, "to avoid intrusive discovery and potentially unnecessary proceedings….the court will deny [defendant's] motion to dismiss without prejudice and stay the case pending further guidance from the Supreme Court." *Raven*, 2023 U.S. Dist. Lexis 115136 at *6.

For these reasons, the Congresswoman respectfully submits that to the extent the viability of the claim turns on whether the @AOC account is a government account and the Congresswoman a state actor in managing it, the case should either be dismissed at this stage based on the Sixth Circuit test, or, in the alternative, stayed pending the Supreme Court's decisions in the *Garnier* and *Lindke* cases.

**B. Even if the Congresswoman Was a State Actor, Exclusion of Mr. Stein for His Personally Abusive and Harassing Speech Was Constitutionally Permissible**

If a social media account is deemed to be a public forum, the level of scrutiny applied to the act of excluding someone depends on what type of forum—traditional, designated or limited. *See e.g., People for the Ethics Treatment of Animals v. Tabak*, No. 21-cv-2380-BAH, 2021 U.S. Dist LEXIS 61363 at *16-18 (D.D.C., March 31, 2023). Mr. Stein contends that the account is a "designated public forum." Cmplt. ¶61. Even assuming the accuracy of that legal assertion, however, the blocking of Mr. Stein from the account would be constitutionally permissible.

The actions of a government actor with respect to a "designated public forum" are governed by the same standards as those that apply in a traditional public forum. *Price v. Garland*, 45 F.4th 1059, 1067-68 (D.C. Cir. 2022). Under those standards:

> For the State to enforce a content-based exclusion, it must be shown that its regulation is necessary to serve a compelling state interest and that it its narrowly drawn to achieve that end…The State may also enforce regulations of the time, place and manner of expression which are content neutral, are narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication.

*Perry Educ. Ass'n v. Perry Local Educators Ass'n*, 460 U.S. 37, 45 (1983). *See Price*, 45 F. 4th at 1067 ("strict scrutiny if the regulation is content based, intermediate scrutiny if it is content-neutral").

In this case, the blocking of Mr. Stein from the @AOC account was not content-based because the conduct on which it was based—the harassing, racist, abusive, misogynistic catcall—was not constitutionally protected speech in the first instance. As the Supreme Court held long ago:

> There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene the profane, the libelous and the insulting or "fighting words"—those which by their very utterance inflict injury or tend to incite an immediate

>breach of the peace. It has been well-observed that such utterances are no essential part of any exposition of ideas and are of such slight social value as a step to truth that any benefit that may be derived form them is clearly outweighed by the social interest in order and morality.

*Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). "Resort to epithets or personal abuse is not in any proper sense communication of information or opinion safeguarded by the Constitution, and its punishment as a criminal act would raise no question under that instrument." *Cantwell v. Connecticut,* 310 U.S. 26, 309-310 (1940).

Manifestly Mr. Stein's conduct fell into this category of "fighting words." His communication was not an expression directed to the general public that employed an obscenity or abusive language. *E.g., Cohen v. California*, 403 U.S. 15 (1971). It was directed solely and personally to the Congresswoman. And it did inherently provoke a natural and normal desire to fight, as the Congresswoman stated in her own post of Mr. Stein's video: "I was actually walking over to deck him because if no one will protect us then I'll do it myself …"

The Supreme Court has clearly distinguished expressions of ideas using profanity and the like from *personally abusive* epithets. As the Court explained in *Cohen,* "States are free to ban the simple use, without a demonstration of additional justifying circumstances, of so-called 'fighting words,' those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Cohen*, 403 U.S. at 20. *See*, to the same effect *Texas v. Johnson*, 491 U.S. 397, 409 (1989) (distinguishing "generalized expression of dissatisfaction" with government policies from "direct personal insult").

To be sure, the Court has struck down criminal statutes purporting to ban "fighting words" on the grounds of vagueness or overbreadth. *E.g., Gooding v. Wilson,* 405 U.S. 518 (1972); *Coates*

*v. City of Cincinnati*, 402 U.S. 611 (1971).  But no one is trying to impose any criminal penalty on Mr. Stein for his conduct or even invoke any statute to ban it.  The question is whether his conduct was constitutionally protected speech that made the blocking a content-based restriction. And the answer is no.

In those circumstances, even if the Congresswoman was a state actor in these circumstances, the act of blocking Mr. Stein would be permissible it was a regulation of the "time, place and manner of expression which [was] content neutral,  narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry Educ. Ass'n*, 460 U.S. at 45.  In this case, the Congresswoman is not prohibiting Mr. Stein from interacting with her on Twitter.  She is only prohibiting him from doing so on her personal/campaign account.  He remains free to do so on her official account.  Her blocking is a reasonable restriction on the manner of expression which does not turn on any constitutionally protected content; serves the significant governmental interest of shielding a woman of color in her personal capacity from harassing, racist, sexist, misogynist abuse; and leaves open an ample alternative channel, namely, her official account, @RepAOC.

For these reasons, even if the Congresswoman were deemed to be a state actor in blocking Mr. Stein from her personal/campaign Twitter account, her action did not violate Mr. Stein's rights under the First Amendment.

## **CONCLUSION**

For the reasons set forth above, Mr. Stein's Complaint does not state a claim against Congresswoman Ocasio-Cortez upon which relief can be granted.  Accordingly, her Motion to Dismiss the Complaint under Fed. R. Civ. P.12(b)(6) should be granted; or in the alternative, the case should be stayed until the Supreme Court decides the *Garnier* and *Lindke* cases.

Dated: September 21, 2023          Respectfully submitted,

                                           /s/ Joseph E. Sandler
Joseph E. Sandler, D.C. Bar 255919
Lucy Xiong
SANDLER REIFF LAMB ROSENSTEIN &
BIRKENSTOCK, P.C.
1090 Vermont Ave., N.W. Suite 750
Washington, D.C. 20005
Tel : (202) 479 -1111
sandler@sandlerreiff.com
xiong@sandlerreiff.com

Attorneys for Defendant
Alexandria Ocasio-Cortez

## CERTIFICATE OF SERVICE

I hereby certify that on September 21, 2023, I electronically filed the foregoing Defendant's Memorandum of Points and Authorities in Support of Motion to Dismiss or in the Alternative, to Stay, with the Clerk of Court using the CM/ECF system, which will cause a copy to be served on all counsel of record.

/s/ Joseph E. Sandler

Joseph E. Sandler

Counsel for Defendant

Alexandria Ocasio-Cortez